# In the United States District Court for the Western District of Texas

| RUDY NARANJO | § | |
| --- | --- | --- |
| | § | |
| v. | § | 5:10-CV-359-XR |
| | § | 5:05-CR-134(1)-XR |
| UNITED STATES OF AMERICA | § | |

ORDER

On this date came on to be considered Petitioner's Motion to Vacate under 28 U.S.C. § 2255, the Magistrate Judge's Report and Recommendation, and the objections thereto. After careful consideration, the Magistrate Judge's Report and Recommendation is accepted and the motion is denied.

**Procedural Background**

On March 16, 2005, a federal grand jury returned a five-count indictment that charged Naranjo and three others with four federal drug felony offenses and one federal firearms felony offense. Specifically, the indictment charged Naranjo with: (1) conspiracy to distribute cocaine or possess with intent to distribute five kilograms or more of cocaine; (2) conspiracy to distribute and possess with intent to distribute fifty grams or more of cocaine base within 1,000 feet of a public elementary school; (3) aiding and abetting the possession with intent to distribute five kilograms or more of cocaine within 1,000 feet of a public elementary school; (4) possession with intent to distribute fifty grams or more

of cocaine base within 1,000 feet of a public elementary school; and (5) knowingly using and possessing a firearm, a semi-automatic SKS assault rifle, in furtherance o f a drug trafficking crime as alleged in counts one through four. At trial, the Government dropped the school allegations.

On January 11, 2006, Naranjo was found and arrested in the Eastern District of Louisiana. At his arraignment hearing, on February 9, 2006, attorney Ronald P. Guyer appeared as Naranjo's retained counsel. Guyer represented defendant through his sentencing hearing. Naranjo filed more than a dozen, "non-routine" pretrial motions. Around the time of the October 31, 2006 suppression hearing, Stanley Schneider joined the defense team and represented Naranjo through appeal.

On February 2, 2007, the Court entered a written order denying Naranjo's motion to suppress evidence. On March 6, 2007, a jury found Naranjo guilty of each of the five counts. The Court denied Naranjo's motion for a new trial on May 18, 2007. On June 20, 2007, the Court sentenced Naranjo to: 360-months confinement on counts one through four, to run concurrently with each other and to be followed by a 120-month consecutive term of imprisonment on count five. The sentence came to a total of 480 months imprisonment. Upon release, Naranjo was ordered to serve a five-year term of supervised release on counts one, two, and five, and a ten-year term of supervised release on counts three and four, each running concurrently.

On June 29, 2007, Naranjo filed his notice of appeal and raised six issues: (1) the trial court erred in denying his motion to suppress "based on its rationale

2

in its Memorandum issued January 4, 2007;" (2) defendant was denied due process "by the prosecutor's knowing use of perjured testimony of Robert Perez concerning his relationship with Nancy Sanford and his interaction with Frank Mora;" (3) the trial court erred in denying defendant's request to receive "the prosecutors' interview notes of cooperating witness Tovar, Losoya, Soto, Fuentes, Barron, Gregory and Ramos as *Jencks* and *Giglio* material for purposes of cross examination;" (4) the district court erred in denying his request for a jury instruction on third-party guilt; (5) the district court erred in overruling his objection to the improper closing argument of the Government, which impermissibly commented on Naranjo's failure to testify; and (6) the district court erred in denying his motion for a mistrial when Robert Fernandez commented that the defendant had previously been in prison. On March 6, 2009, the United States Court of Appeals for the Fifth Circuit affirmed Naranjo's conviction and sentence.

During the direct appeal, on May 20, 2008, Naranjo filed a sealed motion for new trial based on newly discovered evidence. On July 22, 2008, the Court denied Naranjo's sealed motion for new trial, entering a sealed Order. The Court held that Naranjo had not demonstrated that the evidence was newly discovered, and that the evidence was immaterial to any issue at trial. The Court additionally ruled that even if the evidence had been admitted at trial, it was not of sufficient weight to have resulted in Naranjo's acquittal.

On May 7, 2010, Naranjo filed his "§2255 motion...for petition for writ of habeas corpus." Naranjo's original motion lists 23 claims, but was reduced to

3

eleven claims in his memorandum in support of his motion. Naranjo listed three claims of trial court errors and eight claims of ineffective assistance of counsel.

**Factual Background**

In January 2005, the Government's informant, Frank Mora, was a state fugitive. On January 28, 2005, he called the DEA and informed them a black truck, traveling from San Antonio to Houston, contained cocaine and marijuana. A speeding black truck was identified, and the driver, Robert Torres, was arrested for driving without liability insurance. A search of the truck found eleven kilograms of cocaine and more than 68 pounds of marijuana. Subsequently, a title search of the truck linked the vehicle to Naranjo, and an individual identified as Naranjo's nephew visited Torres in jail. The sedan used during the jail visit was registered to Naranjo's common-law wife, Donna Hull. Shortly thereafter, the San Antonio Police Department received a call from a confidential informant who told them where Mora was hiding. When officers arrested Mora, he proceeded to give them information implicating Rudy Naranjo and Juan Losoya in a large-scale drug trafficking operation based out of the Enclaves apartment complex in San Antonio. On the basis of this information, and Naranjo's known drug involvement by the San Antonio Police Department, a search warrant was obtained to examine apartments 905, 1601, and a garage. Evidence found at Apartment 1601, including a hotel receipt, a prescription pill bottle with Naranjo's name on it, documents relating to Bad Boy Audio, Naranjo's business, and an application for Medicaid for his daughter, established that it was Naranjo's residence. He lived there with Donna Hull, the daughter,

and his nephew, Jason Martinez. Further, officers discovered cocaine, clear plastic wrappings with cocaine residue, a money-counting machine, loose marijuana, a safe with $5,000 cash, and an SKS assault rifle with thirty live rounds in it.

Evidence showed that Losoya lived in apartment 905. In this apartment, officers found cocaine, a money-counting machine, a security badge, handcuffs, a hat labeled "narcotics officer," and a bullet-proof vest. Additionally, in the garage, officers discovered 7.6 kilograms of bundled cocaine and 728 grams of bagged cocaine base, a one-gallon plastic bucket holding approximately 1,010 grams of loose cocaine, and a plastic bag holding a brick of cocaine weighing 1,048 grams. Documents found in the garage were labeled with both Naranjo's and Bad Boy Audio's names. Fingerprints raised from the bucket matched Losoya's.

At trial, the Government offered testimony of four cooperating witnesses. There was testimony that different individuals had purchased cocaine from Naranjo, he was in possession of an AK 47 assault rifle, and that Robert Torres was Naranjo's drug courier. Also, Chris Barron testified that while he and Naranjo were in jail together, Naranjo asked him to help have Mora killed, so that he would be unable to testify at trial.

Naranjo called his own witnesses during the trial. An audio recording was introduced into evidence that showed Mora had called Nate Nichols, on January 27, 2005, and asked him to steal cocaine from the Enclave apartments. Torres, the driver of the truck, testified that Mora recruited him to drive the truck to

Houston, and that Mora even helped him load the truck with narcotics. Further, Robert Fernandez testified that he once purchased an assault rifle from Mora, and that the assault rifle discovered in apartment 1601 resembled a rifle he had seen in Mora's possession. As stated above, the jury found Naranjo guilty of each of the five counts.

**Naranjo's Objections to the Report and Recommendation**

The Magistrate Judge recommended that all of Petitioner's claims be denied. In his Objections to the Report, Petitioner "adopts the facts and arguments in his previously filed pleadings," but specifically focuses on his ineffective assistance of counsel claims (claim numbers 3, 4, 5, 6, 7 and 8). In addition, he argues that the Magistrate erred in recommending that claims 9 through 11 be dismissed. Further, he argues that an evidentiary hearing is required. Finally, he argues that in the event his petition is denied, that he should be resentenced pursuant to the Fair Sentencing Act.

**Standard of Review**

Because Petitioner has filed objections to the Magistrate Judge's Report and Recommendation, the Court shall engage in a de novo review. 28 U.S.C. § 636(c).

**Analysis**

Claims 3 and 4

Petitioner essentially claims that Frank Mora has set up other individuals to be accused of crimes for which they were innocent, and he too was set up by Mora. He claims that trial counsel was ineffective for not investigating and

6

interviewing Jason Martinez, Jesse Garcia, and Jesse Naranjo, who could have testified in support of the theory that Mora was the real owner of the drugs and weapon. However, as the Magistrate Judge noted, Naranjo did present evidence at trial that the drugs and weapon seized belonged to Mora and not him. That argument was rejected by the jury. Nevertheless, Naranjo argues that trial counsel was ineffective for not interviewing these witnesses, that these witnesses would have provided exculpatory evidence, that Jason Martinez would have "provided the missing link to explain why Mora provided information to law enforcement officers that led to the seizure of more than one million dollars of his own narcotics," and thus trial counsel's failure to investigate and call them as witnesses was not strategic, but rather uninformed and hence ineffective. As stated by the Magistrate Judge, Naranjo called multiple witnesses at trial who impeached the credibility of Mora and who supported Naranjo's theory that Mora owned the drugs. Even if trial counsel was ineffective for not interviewing the three witnesses, their testimony would have largely been cumulative. More importantly, Naranjo fails to demonstrate that the jury's verdict would have been different. Further, the proposed testimony does not rebut Soto's testimony that he purchased cocaine from Naranjo in Naranjo's garage, where Soto saw the assault rifle on the floor.

With regard to Naranjo's argument that trial counsel failed to address the sufficiency of the evidence regarding the weapon charge, that claim also lacks merit given Soto's testimony that he purchased cocaine from Naranjo in Naranjo's garage, where Soto saw the assault rifle on the floor.

7

Claim 5

Petitioner argues that trial counsel was ineffective in failing to cross-examine Frank Mora about a letter he wrote to his ex-wife expressing his desire to exact revenge on Naranjo and that appellate counsel was ineffective for failing to raise this issue on appeal.

The Magistrate Judge recounted in detail all of the evidence before the jury to support their guilty verdict. The letter Petitioner now relies upon was vague. Petitioner argues that the letter was "another link in the chain of evidence" supporting his defense that Mora had set him up defense. The letter, however, does not, alone or in combination with the other evidence, undermine all of the evidence supporting Naranjo's culpability. Trial counsel cross-examined Mora at length during the trial. Naranjo fails to demonstrate that trial counsel was deficient in failing to specifically address the letter during his examination.

Claims 6 and 7

Naranjo argues that he wanted Martinez to testify on his behalf at trial, but that attorney Barohn invoked Martinez's Fifth Amendment right not to testify. Naranjo argues that Martinez wanted to testify[1] and that Barohn did not have her client's consent to make such an invocation. Naranjo further argues that he was also represented by Barohn and that Barohn's dual representation, after Martinez entered into a plea bargain agreement, was a

---

[1] Dkt 453.

conflict. Naranjo further argues that the trial judge had an obligation to place Martinez on the witness stand, require him to invoke his Fifth Amendment right, and make an inquiry into the legitimacy and scope of the assertion.

The Magistrate Judge recommended denial of these claims because Petitioner's claims that he was represented by attorney Barohn were conclusory. The Magistrate Judge recounted the chronology of the case and the affidavits of the various attorneys in this case. Both make it clear that Petitioner was told that Barohn was representing Martinez and not Petitioner. Petitioner's argument that he should still prevail because he now asserts that Barohn told him that she would still file motions on his behalf is unavailing and conclusory.

As to Petitioner's other claims, they are procedurally barred because he failed to raise them on direct appeal. Otherwise, it appears that Naranjo is arguing that Martinez could have testified about the weapon charge without incriminating himself and his testimony could have been favorable to Petitioner. The Government correctly states that this position is incorrect. Martinez would have implicated himself of a crime - possession of a firearm in furtherance of drug trafficking. Further, the jury, had sufficient evidence that tied Naranjo to the firearm.

Claim 8

Naranjo argues that his attorneys (whom he describes as Guyer and Barohn) interviewed Mora in jail. Mora later accused them of offering him money to alter his testimony. Naranjo alleges that Guyer and Barohn had a duty to withdraw as his counsel as soon as they learned that they were being

9

accused of bribery. Naranjo further argues that after their withdrawal, they could have served as witnesses during trial to further impeach Mora. Allegedly Mora brought this bribery claim to the attention of a Deputy U.S. Marshal. Petitioner claims that his trial attorneys were ineffective by failing to call the Deputy Marshal as a witness.

Naranjo argues that testimony by Barohn, Guyer and the deputy marshal "would have provided substantial evidence of Mora's habit of making false allegations against others." He concedes that other witnesses did present this testimony, but argues that none of the witnesses "possessed the credibility that would have accompanied the testimony of the Marshal or of Naranjo's counsel who is an officer of the court." Further, he argues that this allegation by Mora against Barohn and Guyer created a conflict in their representation of him. Finally, he argues that Mora's testimony "was the only testimony offered at trial connecting the drugs and weapon to Naranjo. Any evidence tending to show that Mora was a manipulative liar ... was evidence that should have been given to the jury."

The Magistrate Judge recommended dismissal of this claim stating that even if Guyer had subpoenaed the deputy marshal, the jury might have concluded that Mora's claim was credible and that - in addition to trying to have Mora killed to prevent him from testifying, Naranjo was trying to have Mora bribed to prevent him from testifying. The Court rejects this part of the Magistarte Judge's Report and Recommendation. Nevertheless, dismissal of the claim is still proper. Despite his characterization that Mora's testimony "was

10

the only testimony offered at trial connecting the drugs and weapon to Naranjo, as recited in the Magistrate Judge's Report at pages 10-12 and 32-35, there was more than sufficient evidence to support the jury's verdict. Petitioner fails to establish prejudice and a reasonable probability that but for counsel's alleged errors, the results of the proceedings would have been different.

Claim 9

Petitioner alleges that the trial court erred in allowing the Government to present Rule 404(b) evidence that Naranjo sought to have Mora killed. He further argues that appellate counsel was ineffective for failing to raise this issue on appeal.

At trial the Government called Chris Barron, who testified that he met Naranjo in jail and Naranjo asked if he could have Mora killed. Barron met Mora while he was in custody and warned him to be careful because Naranjo was trying to have him killed.

Petitioner argues that Mora's repeating what Barron told him was inadmissible hearsay. He further argues that Barron's testimony should have been excluded under Fed. Rule of Evid. 403.

The Magistrate Judge recommended denial of this claim because it is procedurally barred. Petitioner failed to raise the issue on direct appeal.

Claim 10

Petitioner argues that the trial court erred by failing to exclude Pedro Ramos as a witness because of his violation of the sequestration order, and that his appellate counsel was ineffective by failing to raise this issue on appeal.

Upon learning that Pedro Ramos overheard some parts of trial testimony from another witness placed in the same detention holding area, the trial court conducted a hearing and thereafter allowed Ramos to testify, but precluded him from testifying in a number of areas. Given the limited nature of his testimony, it was not deficient for Petitioner's appellate counsel to conclude that this was a futile appellate ground. Petitioner fails to establish prejudice and that there is a reasonable probability that the result of the proceedings would have been different.

Claim 11

Petitioner argues that the cumulative errors allegedly made by trial and appellate counsel violate his right to due process and his right to effective assistance of counsel.

As indicated above and in the Magistrate Judge's Report and Recommendation, there were no cumulative errors, and denial of this claim is appropriate.

Request for Evidentiary Hearing

As indicated above and in the Magistrate Judge's Report and Recommendation, an evidentiary hearing is not needed for a proper disposition of the petition. The motion for hearing is denied.

Fair Sentencing Act, 2010, Pub. L. No. 111-220, § 2, 124 Stat. 2372.

The Judgment in Naranjo's case was signed on June 25, 2007. He was sentenced in counts 1 though 4 to 360 months imprisonment to run concurrently. On count 5 he was sentenced to 120 months imprisonment to run consecutively

12

to counts 1 through 4.

The Government is ordered to file a response to this motion to reduce sentence within fourteen days of this Order. Petitioner is ordered to further brief this issue as to how he believes the sentence should be recalculated.

## Conclusion

The Petition for Writ of Habeas (docket no. 453) is denied. The motion for evidentiary hearing (docket no. 493) is denied. The Government is ordered to file a response to the motion to reduce sentence (contained in Petitioner's Objections to the Magistrate Judge's Report and Recommendation) within fourteen days of this Order. Petitioner is ordered to further brief how he believes his sentence should be recalculated.

It is so ORDERED.

SIGNED this 12th day of September, 2011.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE